FILED & JUDGMENT ENTERED
Christine F. Winchester

March 25 2025

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_Laura T. Beyer_
Laura T. Beyer
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| **THAD WILLIAM PEACH**, ) | Chapter 13 |
| ) | Case No.: 21-30390 |
| Debtor. ) | |
| ) | |

## ORDER GRANTING DEBTOR'S MOTION FOR APPROPRIATE RELIEF

**THIS MATTER** is before the court for hearing on the Debtor's September 19, 2024 Motion for Appropriate Relief—For Sanctions and Attorney Fees and Costs Against Shellpoint Mortgage Servicing for Violation of the Provisions of Debtor's Confirmed Plan Related to Conduit Creditor Duties and Obligations—For Sanctions for Notifying Debtor of and Assessing Debtor's Mortgage Account for Attorney Fees, Late Charges and Property Inspection Fees Unapproved by This Court and/or the Provisions Governing the Conduit Mortgage Program in Debtor's Chapter 13 Case ("Motion"). The court held an evidentiary hearing on the Motion on January 30, 2025 and announced its ruling at a hearing on February 11, 2025. The Debtor's attorney, an attorney representing NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint"), and an attorney for the Chapter 13 Trustee appeared at both hearings.

The court has reviewed the Motion, Shellpoint's October 9, 2024 Response to Motion for Sanctions Against Shellpoint Mortgage Servicing for Creditor Misconduct, and the Joint Stipulations of Facts and Admissibility of Documents submitted by the Debtor and Shellpoint on January 29, 2025, heard the testimony of the Debtor, and considered the arguments of counsel.

The issues addressed by the Motion arise from online loan details dated August 1, 2024 and monthly mortgage statements that Shellpoint issued to the Debtor related to his residential mortgage during the pendency of his bankruptcy case. The facts outlined below are undisputed. The fundamental issues are the implications of the online loan details and monthly statements and whether Shellpoint's communications with the Debtor comply with or violate the requirements of relevant bankruptcy and non-bankruptcy law. For the reasons set forth below, the court finds that Shellpoint's communications violate the relevant law and, accordingly, grants the Motion.

## FINDINGS OF FACT

1.      The Debtor filed his petition and Chapter 13 plan on July 1, 2021, and the court confirmed his Chapter 13 plan (as amended on August 17, 2021) on October 10, 2021.  In the schedules filed in connection with his bankruptcy case, the Debtor disclosed his ownership of his residential real estate located at 2037 Alexis Lucia Road, Stanley, NC 28164 and a mortgage on the residence.  Wells Fargo held the mortgage on the Debtor's petition date.

2.      The Debtor's confirmed plan treats the residential mortgage as a conduit claim, and the Trustee has been disbursing the Debtor's mortgage payments during the pendency of the plan. Wells Fargo transferred its claim to Specialized Loan Servicing LLC ("Specialized") in 2022.  As noted in the July 5, 2024 Transfer of Claim Other than for Security, Specialized subsequently transferred the claim to Shellpoint.

3.      After the transfer of the mortgage claim to Shellpoint, the Debtor reviewed the loan details document dated August 1, 2024 on Shellpoint's website and began receiving monthly mortgage statements from Shellpoint.  This is when the problems that are the subject of the Debtor's Motion began.  The Debtor did not have similar issues earlier in this case when Wells Fargo and Specialized held his mortgage.

4.      The Debtor testified at the January 30, 2025 hearing, and the court finds his testimony to be credible.  The court also finds the Debtor to be unusual in the diligence with which he paid attention to his mortgage statements.  He testified that he kept up with the activity related to his mortgage online and he regularly reviewed (often more than once) each monthly mortgage statement issued by Shellpoint.  The Debtor is genuinely concerned about his mortgage, the unexplained fees and charges being assessed thereto, and the ultimate effect of the fees and charges if his case results in dismissal instead of discharge.

5.      The Debtor immediately contacted Shellpoint about his concerns when he reviewed the August 1, 2024 online loan details and saw entries of "Legal Fees Due" in the sum of $650.00 and "Other Fees Due" in the sum of $60.00 in the "Past Due" section.  The court admitted a printout of the August 1, 2024 loan details into evidence by stipulation of the parties as Exhibit S.

6.      The Debtor did not know the basis for the legal and other fees and became concerned about those fees suddenly appearing, apparently assessed and past due on his mortgage account. When he contacted Shellpoint, a Shellpoint representative told the Debtor that the representative could not discuss the matter with him and he needed to contact his bankruptcy attorney.

7.      The Debtor contacted his attorney promptly, and shortly thereafter his attorney reached out by email to Sydney Cauthen ("Cauthen"), an attorney who filed a Request for Service on behalf of Shellpoint on July 3, 2024.  The parties stipulated to the admissibility of Cauthen's Request for Service as Exhibit F.

8.      The Debtor's attorney's email to Cauthen is dated August 7, 2024 and was stipulated into evidence as Exhibit Q.  The Debtor's attorney attached a copy of Shellpoint's July 12, 2024 mortgage statement to the email and pointed out that there was no factual basis for the $30 property

2

inspection fee shown thereon and that Shellpoint had given no notice of the charge pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 3001.2 or the Local Rules of this court. The Debtor's attorney also included a copy of the August 7, 2024 online loan details and pointed out that there was no basis for the $60 other fees shown thereon and that the $650 in legal fees had not been approved by this court. The Debtor's attorney asked Shellpoint to remove those fees and charges from the Debtor's mortgage statements and totally eliminate them. Lastly, the Debtor's attorney requested that Cauthen respond to his email at her convenience but within 30 days of the date of the email.

9. The Debtor's attorney never received any response or acknowledgement of his email either from Cauthen or anyone else on behalf of Shellpoint. Shellpoint's failure to acknowledge or respond to the Debtor's attorney's email led to the filing of the Debtor's Motion.

10. The Debtor testified about each of the monthly mortgage statements that he received covering the period from June 17, 2024 through January 9, 2025. The court admitted the statements into evidence by stipulation of the parties as Exhibits H–M, O, and P. Each of the monthly statements are similar except as to the amounts of fees being shown as "charged" and/or "paid." While the court is not going to set out a chronological listing of all of the fees and charges shown on those monthly statements in this order, the Debtor detailed the fees and charges in his testimony. Generally, the descriptions of the fees Shellpoint assessed on the monthly statements for the Debtor's mortgage account are confusing and anything but clear and conspicuous.

11. Each monthly statement includes an "Explanation of Payment Amount" for post-petition payments including "Total Fees and Charges." Beneath that section is a "Past Payments Breakdown" showing fees and late charges "Paid Last Month" and "Paid Year to Date." As an example, the monthly statement dated December 9, 2024 (Exhibit O) includes a total for "Fees/Late Charges" "Paid Last Month" in the amount of $650 and "Paid Year to Date" in the amount of $830. The January 9, 2025 statement (Exhibit P) includes an additional fee or late charge of $60 "paid" in the previous month. From these examples and considering the fees and charges on all of the monthly statements covering the period from June 17, 2024 through January 9, 2025, the court finds that Shellpoint assessed $650 in attorney's fees and another $240 in property inspection and other fees to the Debtor's mortgage account.

12. The second page of the monthly statements includes a "Transaction Activity" section. In that section, many of the statements list a "Property Inspection Waiver" with a corresponding payment amount. Despite the "waiver" description, the payment amounts are positive numbers rather than being preceded by minus or negative symbols.[1] Similarly, in the same section on Exhibit O, for example, there is an entry shown as "Attorney Cost Waiver" with the amount of $650 in the "Payments" column, again shown as a positive number with no minus or negative symbol in front of it.

13. The Debtor testified that he did not send the money for these "payments" to Shellpoint or know who was paying those fees. He was only aware of the Trustee making conduit payments to Shellpoint on his behalf.

---

[1] Some amounts in the Transaction Activity section of various statements for other items not relevant to the Motion are negative.

3

14. The Debtor testified that he understood the dictionary definition of the word "waiver" to mean that something was not charged. In this case, however, he was confused by the corresponding entries indicating that the fees had been paid despite the use of the word "waiver" on the monthly mortgage statements. Because of that discrepancy, the Debtor did not understand the statements and was further confused because had the fees actually been waived, he would have expected to see the numbers indicated on the statements as negative numbers, but they were not.

15. In sum, the Debtor knew that he had not directly paid the fees reflected on the statements as paid, and he knew that the Trustee was paying his mortgage payments. But he also believed that the fees assessed against his mortgage account were being paid because every monthly statement he received reflected those fees as having been paid. As a result, he could not understand how Shellpoint was applying the funds it was receiving monthly from the Trustee's conduit mortgage payments.

16. The Debtor testified that he was most concerned about what would happen if his case was dismissed prior to discharge and Shellpoint demanded payment of all the assessed fees when he had no court protection.

17. On cross examination, Shellpoint's attorney walked the Debtor through some of the boilerplate language appearing on every mortgage statement, including "[t]his is not an attempt to collect a debt due to your bankruptcy filing." Nevertheless, the statements did not explain the fees apparently being assessed or how such fees were being paid, and the boilerplate language was therefore confusing at best.

18. During his argument, the court asked Shellpoint's attorney about the nature and basis of the fees, and Shellpoint's attorney did not have an answer. He had no understanding of why the fees had been charged, no record of attorney's fees being incurred, and no record or evidence of property inspections having been conducted at the Debtor's residence. Further, the court notes that Shellpoint knew of the Debtor's Motion for months prior to the January 30, 2025 hearing date and could have sent a representative to the hearing to explain the basis for the fees and the confusing language of the online loan details and the monthly mortgage statements it issued to the Debtor. Shellpoint did not send a representative (other than its attorney) to the hearing.

19. The court finds that there was no basis for the assessment of either the attorney's fees or the property inspection fees reflected on the monthly statements.

## CONCLUSIONS OF LAW

20. This matter is properly before the court on the Debtor's Motion.

21. Due notice and an opportunity to be heard has been afforded to all parties in interest affected by the Debtor's Motion.

22. The jointly prepared and submitted Joint Stipulations of Facts and Admissibility of Documents submitted to the Court on January 29, 2025 has been received, reviewed, and made part of the record.

4

23. To the extent any findings of fact stated above also constitute conclusions of law, or these conclusions of law also contain findings of fact, they shall be construed to be both findings of fact and conclusions of law.

24. Local Rule 2016-2(i)(1)(C) requires real property creditors to file Official Bankruptcy Form B 410S-2 to apply for post-petition attorney's fees. Shellpoint has failed to follow the procedures set out in the local rule regarding the attorney's fees it attempted to assess against the Debtor's mortgage account. Shellpoint has not filed the official form or any similar notice.

25. Shellpoint's method of assessing the attorney's and inspection fees is also contrary to the terms and provision of Part 8.1.8(e) of the Debtor's confirmed plan, which provides that conduit creditors shall refrain from assessing or adding additional fees to the loan obligation of the Debtor unless notice of such fees has been timely filed under FRBP 3002.1. Shellpoint has not provided that notice.

26. There is no factual basis for the fees assessed and charged by Shellpoint, proper notice with respect to such fees has not been provided, and Shellpoint has not sought court approval for the attorney's fees it seeks to charge against the Debtor's mortgage account.

## NCGS § 45-91

27. North Carolina General Statute ("NCGS") § 45-91 is applicable to this case. Section 45-91 applies to every home loan, regardless of whether the loan is in default or the borrower is in bankruptcy. The statute provides, in pertinent part, that any fee that is incurred by the servicer shall be both assessed within 45 days of the date on which the fee was incurred and explained clearly and conspicuously in a statement mailed to the borrower within 30 days of assessment. § 45-91(1). A servicer's failure to follow this statutory process in charging any fee constitutes a waiver of such fee. § 45-91(3). As noted in the findings of fact, the Debtor received monthly mortgage statements from Shellpoint and found such statements to be confusing and anything but clear and conspicuous, a view shared by this court. Accordingly, the fees sought to be assessed by Shellpoint, including attorney's fees, inspection fees, and other fees, are deemed waived and disallowed.

## FRBP 3002.1

28. FRBP 3002.1 applies to this case, as it does in every Chapter 13 case where the holder of a claim secured by an interest in the debtor's principal residence (Shellpoint in this case) is being paid by a trustee in contractual monthly installments, as is the case here. Subsection (c) of the rule provides that such claim holder must file a notice itemizing all fees, expenses, and charges incurred after a bankruptcy case is filed that the holder asserts are recoverable against the debtor or the debtor's principal residence. The notice must then be served on the debtor, the debtor's attorney, and the trustee within 180 days of when the fees, expenses, or charges were incurred. FED. R. BANKR. P. 3002.1(c). Shellpoint has not filed a notice as required by FRBP 3002.1. Shellpoint argues that even if the rule prohibits collection of the fees in the bankruptcy case, it could collect the fees if the court dismissed the Debtor's case without discharge. That is the precise scenario that the Debtor testified troubled him most: Shellpoint, in the event of the dismissal of his case, might try to collect any number of fees, expenses, and charges assessed during the pendency of the case

5

despite the fact that the Debtor received no notice of those fees during the case, no opportunity to examine them to make sure they were properly assessed, and no opportunity to object to them.

29. The issues raised in this case are virtually the same as those previously considered by the Honorable J. Craig Whitley in In re Owens, No. 12-40716, 2014 WL 184781 (Bankr. W.D.N.C. Jan. 15, 2014). In Owens, the mortgage creditor argued that because it did not intend to collect its post-petition assessed fees during the bankruptcy case (or afterwards so long as the debtors obtained their discharge), it had no duty to file a notice of the fees pursuant to FRBP 3002.1. Id. at *2. Judge Whitley held that the mortgage creditor was required to comply with FRBP 3002.1 because it asserted that its post-petition fees were recoverable when it mailed the debtors' monthly mortgage statements including the fees. Id. at *3. Judge Whitley explained that the applicability of the rule did not turn on the intent of the creditor and whether it intended to later waive the asserted fees or to collect them only if the court dismissed a debtor's case without discharge. Id.

30. Judge Whitley further ruled that the Supremacy Clause of the United States Constitution and NCGS § 45-91 require compliance with FRBP 3002.1. Id. NCGS § 45-91 requires compliance with its provisions as long as those provisions do not violate the Bankruptcy Code. N.C. GEN. STAT. § 45-91(1)(b).

31. Finally, Judge Whitley concluded that the purposes and policy behind FRBP 3002.1 would be undercut if its requirements did not apply merely because a creditor expressed an intent to collect a post-petition fee at some later date or upon the occurrence of some possible future circumstance instead of immediately or during the pendency of the case. Owens, 2014 WL 184781, at *3–4.

32. The court adopts the reasoning of Judge Whitley in the Owens case and reaches the same conclusion. Shellpoint must file an FRBP 3002.1 notice with respect to post-petition fees during the pendency of the case regardless of whether it intends to collect the fees during the case or at some point in the future. A contrary holding would frustrate the purpose of the rule and be a tremendous disservice to debtors. The Advisory Committee on Bankruptcy Rules suggested adoption of FRBP 3002.1 "to aid in the implementation of § 1322(b)(5),"[2] to allow timely notice of any charges on mortgage loans, to "permit the debtor or trustee to challenge the validity of any such charges," and "to adjust postpetition mortgage payments to cover any undisputed claimed adjustment." FED. R. BANKR. P. 3002.1, Advisory Committee Notes (2011); see also In re Dewitt, 651 B.R. 215, 223–25 (Bankr. S.D. Ohio 2023) (citing committee notes regarding purpose of rule); In re Ferrell, 580 B.R. 181, 184 (Bankr. D.S.C. 2017) (same).

33. It would be much more difficult for a debtor to litigate these issues after her bankruptcy case, either in state court with a different attorney or by rehiring her bankruptcy attorney (or some other bankruptcy attorney) to reopen her case and litigate the issues in the bankruptcy court.[3] See Dewitt, 651 B.R. at 225 ("After the case concludes, these issues are significantly more

---

[2] Section 1322(b)(5) "permits a chapter 13 debtor to cure a default and maintain payments on a home mortgage over the course of the debtor's plan." FED. R. BANKR. P. 3002.1, Advisory Committee Notes (2011).

[3] Even worse, in some districts it may be impossible to litigate these issues after a bankruptcy case. See In re McCants, 626 B.R. 80, 83 (Bankr. M.D. Ga. 2021) ("After the Debtor's first case was dismissed, the Creditor's claim reverted to a mortgage default claim against the Debtor outside of a bankruptcy proceeding. Therefore, the Creditor's previous failure to provide notice under Rule 3002.1 in the dismissed bankruptcy proceeding has no effect on its current mortgage

6

difficult to resolve and may require the debtor to expend time and resources to reopen the bankruptcy case and seek relief."). While a case is open and a debtor's plan is ongoing, the debtor can use bankruptcy tools to question the fees or modify her plan. Id. This is exactly why the Advisory Committee added FRBP 3002.1 to the bankruptcy rules.

### Sanctions and Injunctive Relief

34. With respect to sanctions, it is appropriate to award reasonable attorney's fees to the Debtor's counsel pursuant to FRBP 3002.1 and 11 U.S.C. § 105 for services caused by Shellpoint's failure to comply with the rule and to award the Debtor $1000 in damages pursuant to section 105.

35. It is also appropriate for the court to enjoin Shellpoint from assessing post-petition mortgage fees without complying fully with the applicable provisions of FRBP 3002.1 and the Local Rules.

36. The court has reviewed the Attorney Fee Affidavit filed by the Debtor's attorney on February 6, 2025 and finds the fees requested to be reasonable. Shellpoint's attorney and the Chapter 13 Trustee have also had the opportunity to review the Attorney Fee Affidavit, and neither has raised any questions or objections.

37. FRBP 3002.1 was adopted over a decade ago, and several courts have since ruled in a manner consistent with Judge Whitley's ruling in the Owens case, see, e.g., In re Gravel, 6 F. 4th 503, 514 (2d Cir. 2021) ("Rule 3002.1 ensures that debtors are informed of new post-petition obligations (such as fees). The rule requires formal notice to debtors and trustees, and it assures creditors that they will not violate the automatic stay. Debtors then have a chance to pay or contest the new obligations, which prevents lingering deficits from surfacing after the case ends."); Dewitt, 651 B.R. at 222–25 ("Rule 3002.1 not only provides a mechanism to ensure that the debtor has cured all arrearages and is current with respect to all mortgage obligations at the end of the case, but it also provides the information which the parties need to address any outstanding amounts due under the mortgage so that there are no 'surprises' later." (citing Farrell, 580 B.R. at 184)); Culberson v. Nationstar Mortg., LLC (In re Culberson), Ch. 13 Case No. 15-15519, Adv. No. 21-01012, 2022 WL 2111268, at *10 (Bankr. E.D. Tenn. June 10, 2022) ("Accurate representations are required under Bankruptcy Rule 3002.1 to prevent the very problem the Culbersons are facing. Providing information to a debtor about the status of his or her mortgage loan is why the procedures outlined in Bankruptcy Rule 3002.1 were enacted."). Shellpoint should have known better than to assess fees without complying with FRBP 3002.1 in this case. The court was shocked to learn of Shellpoint's practices and again finds and concludes that it is appropriate to award both damages to the Debtor and attorney's fees to the Debtor's attorney under FRBP 3002.1 and section 105 to deter these practices both in this case and in other similar bankruptcy cases in the future.

38. Section 105 of Title 11 vests bankruptcy courts with the power to prevent abuse of the bankruptcy process, including the power to sanction where a creditor has engaged in a maneuver or scheme sufficient to undermine the integrity of the bankruptcy system, disrupt the bankruptcy process, and prejudice debtors. See In re Evergreen Sec., Ltd., 570 F.3d 1257, 1263 (11th Cir. 2009)

---

claim against the Debtor." (citing In re Hollingsworth, Ch. 13 Case No. 07-05759, Adv. No. 08-00244, 2012 WL 4465593, at *4 (Bankr. N.D. Ala. Sept. 25, 2012))).

7

("Federal statute 11 U.S.C. § 105(a) also gives the court the authority to '*sua sponte*, tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.' " (quoting § 105(a))); see also In re Charbono, 790 F.3d 80, 83 (1st Cir. 2015) (holding that bankruptcy courts have the inherent power to sanction parties for violations of their orders). That is exactly what Shellpoint has done here.

39. The court believes and therefore concludes that the $1000 in damages awarded to the Debtor in this matter is a de minimus amount given the time that he spent reviewing his mortgage statements, fretting over those mortgage statements, trying to understand the fees being assessed by Shellpoint, visiting and communicating with his attorney regarding the fee issues, and traveling to both the initial evidentiary hearing to testify and the continued hearing to receive this court's ruling.

40. The court hereby advises Shellpoint that if it is brought back before this court in this or another bankruptcy case on these or similar issues, it can expect that the court will consider imposing far steeper monetary sanctions.

**NOW, THEREFORE, based upon the above Findings of Fact and Conclusions of Law, the court orders, adjudges, and decrees:**

1. Debtor's Motion is granted.

2. The post-petition inspection fees, attorney's fees, and any other fees assessed by Shellpoint to the Debtor's mortgage loan post-petition are waived, disallowed, and ordered removed from the Debtor's mortgage loan.

3. The court directs that Shellpoint refrain from assessing such fees in the future unless there is a basis for such fees and Shellpoint complies with NCGS § 45-91, FRBP 3002.1, and the Local Rules with respect to any fees, expenses, or charges incurred that it intends are recoverable against a debtor or a debtor's property at any point in time regardless of whether the debtor gets a discharge or the case is dismissed.

4. The court orders that the Debtor's $1000 in damages and attorney's fees in the sum of $8592.50 be paid by Shellpoint to the Debtor's attorney within 30 days of the date of entry of this order.

**SO ORDERED**.

This Order has been signed electronically. The judge's signature and court's seal appear at the top of the Order.

United States Bankruptcy Court